```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF KENTUCKY
                         LEXINGTON
```

SARAH BROWN CLEMENTS,           )
                                )
                                )  Civil Action No. 5:05-466-JMH
      Plaintiff,                )
                                )
v.                              )
                                )  **MEMORANDUM OPINION AND ORDER**
EASTERN KENTUCKY UNIVERSITY,    )
*et al.*,                       )
                                )
                                )
      Defendants.               )
                                )

                    **     **     **     **     **

Before the Court is Defendants' motion to dismiss [Record No. 9] to which Plaintiff responded in objection [Record No. 11] and Defendants replied [Record No. 12]. The matter is now ripe for decision.

## I.    FACTUAL BACKGROUND[1]

Plaintiff was a student at Eastern Kentucky University ("EKU") from September 1998 until July 2004. Plaintiff received an undergraduate degree in 2002 and, thereafter, was admitted into the Master of Arts in Education, Communication Disorders program. Plaintiff completed all the necessary course work to obtain a Master's Degree and finished with a grade point average of 3.31 on a 4 point scale. In addition to the course work, however, the program requires a passing grade of 3.0 on an oral exam.

On July 7, 2004, Plaintiff took the first of three oral exams.

---

[1] The following facts are alleged in Plaintiff's complaint.

The first exam was administered by two unnamed professors. Plaintiff received a failing 2.9 grade, but the exam was not recorded. Plaintiff requested and received another exam that was given on July 14, 2004. The same two unnamed professors conducted the exam along with Defendant Martin Diebold ("Diebold"), the acting head of the Department. Plaintiff was later advised she received a failing grade of 2.29.

Plaintiff appealed the second exam to "the appropriate officials of EKU", requesting an "unbiased panel that did not include any of the persons who had administered the first two oral exams." (Pl.'s Compl. ¶ 13.) Although Diebold and the two unnamed professors resisted giving Plaintiff a third exam, on July 14, 2004, "the responsible officials for EKU" directed that another exam be administered by the same panel that administered the second exam. (*Id*.) On November 5, 2004, Plaintiff took the third oral exam and again received a failing grade. It is not clear from the complaint if Plaintiff was dismissed from the program due to her inability to pass the exams. It is clear, however, that Plaintiff did not obtain a Master's Degree because of her failure to pass the oral exams.

Plaintiff filed the instant complaint against EKU, Diebold, EKU President, Joanne K. Glasser ("President Glasser"), the Provost and Academic Vice-President, James Chapman ("Vice-President Chapman"), and the Interim Dean of the Graduate School, Elizabeth

Wachtel ("Dean Wachtel"). The officials are only named in their official capacity. Plaintiff alleges she repeatedly requested an oral exam before an impartial and unbiased panel, but "EKU through its officers and employees" refused this request. (Id. ¶ 15.) She contends that "[t]he members of the panel who conduct[ed] the oral exams for Plaintiff . . . had demonstrated animosity and bias toward Plaintiff and should have been disqualified from sitting on such panels." (*Id*. ¶ 16.)

The complaint asserts federal substantive and procedural due process claims, federal equal protection claims, as well as state constitutional and breach of contract claims. Plaintiff alleges she suffered loss of income from being unable to work as a Speech Pathologist and seeks monetary and injunctive relief from EKU and injunctive relief from the named officials.

## II.   STANDARD OF REVIEW

Defendants filed the instant motion to dismiss arguing that several claims are barred by sovereign immunity and the applicable statute of limitations.[2] Alternatively, Defendants argue that

---

[2] Defendants move for dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and 12(b)(6). Defendants' motion argues in part that the Court does not have jurisdiction over the claims because of the doctrine of sovereign immunity. As Defendants do not argue the Court lacks *personal* jurisdiction over the defendants, the Court construes their motion for 12(b)(2) as a motion under 12(b)(1). *See Keller v. Cent. Bank of Nig.*, 277 F.3d 811, 815 (6th Cir. 2002) (reviewing district court's denial of motion to dismiss on grounds of subject matter jurisdiction based on sovereign immunity).

Plaintiff's complaint fails to state a claim for which relief may be granted. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). In the case at hand, Defendants rely on the allegations in the complaint in moving for dismissal, so all Plaintiff's allegations are considered as true for the purpose of this motion.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. The Court views the complaint in the light most favorable to the plaintiff and "must accept as true 'well-pleaded facts' set forth in the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)); *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002).

Pursuant to liberal pleading rules, the complaint is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When deciding a motion to dismiss, the Court is mindful of the purpose of the complaint, which is to provide a defendant with notice of the claims asserted and the grounds supporting the

claims. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* at 514 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

### III.   ANALYSIS

**A.   Sovereign Immunity**

*1.   Monetary and Injunctive Relief Against EKU Barred*

Defendants argue that as an agency of the Commonwealth, sovereign immunity precludes all claims against EKU, including claims for monetary relief. In addition to injunctive relief, the complaint seeks reimbursement from EKU for "lost income caused by the unreasonable withholding of Plaintiff's Master's Degree", as well as costs and attorney's fees. (Pl.'s Compl. 5-6.) The complaint does not seek monetary relief from the named officials. Plaintiff concedes that monetary relief is precluded, but argues that injunctive relief is not barred by sovereign immunity. (Pl.'s Resp. 5.) The Court agrees.

The Eleventh Amendment provides an unconsenting state protection from suit "brought in federal courts by citizens of that state as well as citizens of another state, and suits against state officials are barred when 'the state is the real, substantial party in interest.'" *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489

(6th Cir. 2002) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984)); U.S. Const. amend. XI. The doctrine is applicable not only where a state or its officials are named directly as parties, but also applies to suits against state agencies, including state universities. *Martin v. Univ. of Louisville*, 541 F.2d 1171, 1176 (6th Cir. 1976) (holding that the University of Louisville is an agency of the Commonwealth for purposes of sovereign immunity).

Thus, EKU and the named officials are immune from suit unless an exception to the doctrine of sovereign immunity applies. *See Robinson v. Bd. of Regents of EKU*, 475 F.2d 707, 711 (1973) (making the necessary holding that EKU is an agency of the Commonwealth in upholding curfew regulations that were only applicable to female dormitory residents under an equal protection challenge); *Martin,* 541 F.2d at 1176.

The Supreme Court in *Ex parte Young* long ago held that sovereign immunity does not apply in "a suit challenging the constitutionality of a state official's action". *Rossborough*, 301 F.3d at 489 (citing *Ex parte Young*, 209 U.S. 123, 150-60 (1908)). The *Ex parte Young* exception is very narrow and only permits claims against *state officials* for prospective injunctive relief. *Id*. Plaintiff's complaint seeks monetary and injunctive relief from EKU and injunctive relief from the named officials. Because the *Ex parte Young* exception only permits suit for injunctive relief

6

against state officials, all of Plaintiff's claims against EKU, including any claims for monetary relief, are dismissed.[3] *Hill v. Bd. of Trs. of Mich. State Univ.*, 182 F. Supp. 2d 621, 625-26 (W.D. Mich. 2001).

    2.   *State Law Claims Barred*

Defendants also argue that sovereign immunity bars Plaintiff's claims for injunctive relief based on violations of state law. In particular, Plaintiff's complaint alleges that "[t]he unreasonable refusal to provide Plaintiff with a reasonable opportunity to set for her oral exam before an impartial and unbiased panel was a breach of her contract with EKU under the law of Kentucky." (Pl.'s Compl. ¶ 22.) The complaint also seeks relief pursuant to Section 2 of the Kentucky Constitution. (*Id*. ¶ 21.) Plaintiff's response does not contest this argument.

The Court agrees with Defendants that "[t]o the extent that [Plaintiff] seeks to sue state officials in a federal court for violating state law, such a suit is indeed barred." *McNeilus Truck & Mfg., Inc. v. Ohio ex rel Montgomery*, 226 F.3d 429, 439 (6th Cir. 2000) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123 (1984)). Thus, Plaintiff's claims for injunctive relief

---

[3] Further, state universities and officials sued in their official capacities are not "persons" subject to suit pursuant to § 1983. *Will v. Mich. Dep. of State Police*, 491 U.S. 58, 70-71 (1989). On the other hand, state officials sued in their individual capacity or sued for prospective injunctive relief are considered "persons" subject to suit pursuant to § 1983. *Id*. at 71 n.10.

based on state law are also barred by the doctrine of sovereign immunity.

### 3. *Named Officials Except Diebold Dismissed*

Defendants argue that the complaint does not sufficiently tie the named officials to the alleged constitutional violations of Plaintiff's substantive due process rights. Plaintiff names President Glasser, Vice-President Chapman, Dean Wachtel, and Diebold, in their official capacities. Plaintiff does not specifically respond to this argument and, instead, just argues that "Defendants" arbitrarily and capriciously denied her due process by administering tests that were biased. (Pl.'s Resp. 3-4.) The Court agrees with Defendant that the complaint only ties Diebold to the alleged constitutional violations and the remedy sought.

In order for the *Ex parte Young* exception to apply, the plaintiff must allege that the state official's actions are unconstitutional. *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415-16 (6th Cir. 1996). In fact, there must be "some connection with the enforcement of the act, or else it is merely making . . . the State a party." *Ex parte Young*, 209 U.S. at 157; *Kelly v. Burks*, 414 F. Supp. 2d 681, 685 (E.D. Ky. 2006) ("There must be some nexus between the official being sued, the injury suffered, and the remedy sought."). *Ex parte Young* held that "[t]he fact that the state officer by virtue of his office has

8

some connection with the enforcement of the act is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Ex parte Young*, 209 U.S. at 157.

In the instant case, the complaint alleges that Diebold, the acting Head of the Department, was responsible for the composition of the third panel and was on the second and third panels that arbitrarily and capriciously withheld a Master's Degree by repeatedly giving Plaintiff failing grades on the oral exams. The complaint seeks "a reasonable opportunity to repeat the oral exam . . . before a panel of qualified examiners who are neutral and unbiased; or that Defendants be ordered to otherwise devise a fair, equitable and objective way of measuring Plaintiff's fitness to receive a Master's Degree." (Pl.'s Compl. 5.) These allegations sufficiently connect Diebold to the alleged constitutional violations and to the remedy sought.

As for the remaining officials, the complaint merely states each official's position at EKU and does not connect President Glasser, Vice President Chapman, or Dean Wachtel to the alleged unconstitutional decision to arbitrarily and capriciously deny Plaintiff of her due process rights by administering a biased oral exam. The complaint vaguely states that "Defendants" are responsible for failing to provide an unbiased exam, but does not provide any details about their connections to the constitutional

9

claims.[4]  Also, the complaint does not provide information on the authority each official has to enforce the alleged constitutional deprivation.  Therefore, at this time, the named officials other than Diebold are dismissed without prejudice.  Plaintiff may seek leave to amend the complaint to allege more specific allegations as to the other named defendants if she so chooses.

**B.     Statute of Limitations**

Defendant also argues that the statute of limitations bars any federal claims based on the first two exams because they occurred over one year from the filing of this action.  Even though statute of limitations is an affirmative defense, "a complaint which shows on its face that relief is barred . . . is properly subject to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."  *Gibson v. Am. Bankers Ins. Co.*, 91 F. Supp. 2d 1037, 1040 (E.D. Ky. 2000).  Plaintiff first argues that "there was an ongoing arbitrary deprivation of a valuable right" and, thus, the statute of limitations began to run at the completion of the third exam, on November 5, 2004.  (Pl.'s Resp. 4.)  Alternatively, she argues that she appealed the second exam and said appeal did not end until the third exam was administered on November 5, 2004.[5]  The Court finds, however, that it is not

---

[4] The complaint also does not tie the named officials to the procedural due process or equal protection claims.

[5] Finally, she argues that the first two exams are evidence of why the third exam was arbitrarily and capriciously administered.

clear on the face of the complaint that the claims are barred.

Because § 1983 does not provide a statute of limitations, the Court looks to the analogous state statute of limitations. *See* 42 U.S.C. § 1988(a); *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). The Supreme Court long ago held that § 1983 actions are "characterized as personal injury actions". *Wilson*, 471 U.S. at 280. The applicable statute of limitations for personal injury actions in Kentucky provides that an action must be commenced within one year after the cause of action accrued. K.R.S. § 413.140(1)(a); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Although the Court looks to state law to determine the appropriate statute of limitations, federal law determines when the cause of action accrues. *Lawson v. Shelby County, Tenn.*, 211 F.3d 331, 336 (6th Cir. 2000). A cause of action accrues "'when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.'" *Collard*, 896 F.2d at 183 (quoting *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988)).

There are two exceptions to the general rule that a cause of action accrues when the plaintiff knows or reasonably should know of the injury. The first is "where the plaintiff can show prior

---

As this is a motion to dismiss and not a motion in limine, the Court does not reach this argument.

11

discriminatory activity that continues into the present, as opposed to prior discriminatory activity whose effects continue into the present." *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003). The second is "where the plaintiff can show a 'longstanding and demonstrable policy of discrimination.'" *Id.* The Supreme Court has held that the first exception applies in hostile environment actions, but not to discrete acts of discrimination. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The Sixth Circuit recently held that *Morgan* is applicable to § 1983 actions. *Bell*, 351 F.3d at 247 (citing *Sharpe v. Cureton*, 319 F.3d 259, 263, 267-68 (6th Cir. 2003), that applies *Morgan* to § 1983 action brought by former firefighters against their supervisors for transferring the plaintiffs to undesirable locations in retaliation for exercising their Fist Amendment rights).

Plaintiff filed the complaint on November 2, 2005. The first exam was administered on July 7, 2004; the second on July 14, 2004; and the third on November 5, 2004. It is clear the third exam, taken on November 5, 2004, is within the statute of limitations because the complaint was filed within one year. The problem lies with the first two exams.

While the Court is not willing to state with certainty that the three exams are "ongoing" for purposes of the statute of limitations defense, the Court is also not willing to hold that the three exams are not commonly linked through the EKU appeals process

as the complaint does not include the pertinent university regulations. For example, the first exam was not recorded and the Department reluctantly gave her the second exam, which she appealed and was subsequently given the third exam. It is not clear, thus, that the failing grades for the first two exams were final until she received the grade for the third exam. Final action by EKU, however, is not be confused with exhausting state remedies. *See e.g. Collard*, 896 F.2d at 184 (holding that final action by Kentucky Board of Nursing disciplining the plaintiff began the statute of limitations, as opposed to when the appellate process of the Board's decision was complete at the state court level); *Roberson v. Tennessee*, 399 F.3d 792, 795-96 (6th Cir. 2005) (affirming the district court's holding that accrual began when the Student Promotions Committee's decided to dismiss the plaintiff from medical school for academic and health-related reasons). It is possible that after discovery Defendants may find that EKU regulations provide otherwise, but at this stage of the litigation, Plaintiff's complaint does not clearly show that the substantive due process claims for the first two exams are barred by the statute of limitations.

Defendants have not argued specifically as to the applicable statute of limitations for the procedural due process or equal protection claims. Accordingly, the Court does not reach those issues.

13

**C.    Failure to State Claim for Injunctive Relief**

Defendant argues that in order to state a claim for a substantive due process violation, Plaintiff must allege that the academic evaluation was "a product of improper motive or 'is such a substantial departure from the accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" (Def.'s Mot. to Dismiss 5 (quoting *Haberle v. Univ. of Ala.*, 803 F.2d 1536, 1539 (11th Cir. 1986)). Based on the Supreme Court's decision in *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225 n.11 (1985),[6] Defendant argues that universities must be given the broadest discretion in decisions regarding promotion or graduation. Defendant asserts that Plaintiff has failed to state a substantive due process claim because the complaint against Diebold fails to

---

[6] In *Ewing*, the plaintiff alleged a substantive due process claim based on his dismissal from medical school for poor academic performance. The plaintiff received several poor grades and failed the National Board of Medical Examiner's Part I test, a requirement of the program. The Supreme Court held that "even if Ewing's assumed property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from arbitrary state action, the facts of record disclose no such action." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 223 (1985). Assuming a protected property interest, the Court found that the university's decision "was made conscientiously and with careful deliberation, based on an evaluation of the entirety of Ewing's academic career." Noting that judges should "show great respect for the faculty's professional judgment", the Court found that the university's decision should not be upset "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.* at 225.

allege that he made any decisions not based on professional judgment. In response, Plaintiff argues that the complaint states a claim for substantive due process violations because the complaint alleges that the panel "had demonstrated animosity and bias toward Plaintiff". (Pl.'s Compl. ¶ 16.) Assuming this cause of action exists, the Court agrees with Plaintiff.

Much narrower than the property or liberty rights protected by procedural due process, substantive due process rights "include those protected by specific constitutional guarantees, such as the Equal Protection Clause, freedom from government actions that shock the conscience, and certain interests that the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental." *Bell*, 351 F.3d at 250 (internal citations and quotations omitted). Substantive due process rights are "fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). The Supreme Court has found fundamental rights to: reasonable care and safety while in government custody, traveling locally, marrying, directing the education of one's children, marital privacy, using contraception, bodily integrity, and abortion. *Bell*, 351 at 250 n.10.

Defendant did not brief the issue of whether there is a protected property interest in attaining a Master's Degree as is necessary for substantive due process and this issue has not been

15

decided by the Supreme Court.[7]  *Ewing*, 474 U.S. at 223 (assuming without deciding that there is a protected property interest in continuing medical school and holding that the university's dismissal was not arbitrary and capricious); *see also Bd. of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91-92 (1978) (assuming without deciding that federal courts can review the decision of a university to dismiss a medical student for academic reasons and holding that the substantive due process claim should be dismissed because the school's decision was not arbitrary or capricious); *Amaechi v. UK*, No. 02-241-JMH, slip op. at 17-19 (E.D. Ky. Sept. 30, 2003) (assuming without deciding that doctoral candidate had a protected property interest in continued enrollment in the Education Policies program and deciding that the decision to dismiss the plaintiff for failure to complete a doctoral dissertation was not arbitrary and capricious).

---

[7] The Court notes that the Sixth Circuit recently held in *Bell v. Ohio*, 351 F.3d 240, 251 (6th Cir. 2003), that where "there is no equal protection violation, we can see no basis for finding that a medical student's interest in continuing her medical school education is protected by substantive due process".  The panel held that merely showing the university acted in a arbitrary and capricious manner was not sufficient.  The panel further held that even assuming there was a substantive due process interest in continuing the plaintiff's medical education, "the decisions of the defendants in this case, like the defendants' determination in *Ewing*, 'rested on an academic judgment that is not beyond the pale of reasoned academic decision-making when viewed against the background of [her] entire career.'" *Id.* at 252 (quoting *Ewing*, 474 U.S. at 227-28, alteration in original).  Plaintiff's complaint alleges an equal protection violation, which has not been contested by Defendant in this motion.

At this stage of the litigation, viewing all the facts in the light most favorable to Plaintiff, and assuming that there is a substantive due process right in attaining a Master's Degree, the Court finds that the complaint states a claim for relief. The complaint states that the panel's members "had demonstrated animosity and bias toward Plaintiff". (Pl.'s Compl. ¶ 16.) Keeping in mind that the function of a complaint is to apprise the defendant of the claims against him, *Minadeo v. ICI Paints*, 398 F.3d 751, 751 (6th Cir. 2005); Fed. R. Civ. P. 8(a); Plaintiff's statement that the panel was biased and showed animosity toward her is sufficient to apprise Diebold that the complaint alleges that the panel did not use professional judgment in evaluating the oral exams. Therefore, the substantive due process claims against Diebold for injunctive relief survive the motion to dismiss.

Defendants did not specifically move for dismissal of the procedural due process or equal protection claims or present argument about how the complaint fails to state claims under Rule 12(b)(6). As a result, these claims also survive Defendant's motion to dismiss.

### IV. CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

(1) That Defendants' motion to dismiss [Record No. 9] be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART** as follows:

A) **GRANTED** to the extent the complaint seeks any relief

17

from EKU, including any monetary relief, and said claims are **DISMISSED WITH PREJUDICE.**

B) **GRANTED** to the extent the complaint seeks relief against the named officials for violations of state law and said claims are **DISMISSED WITH PREJUDICE.**

C) **GRANTED** to the extent the motion seeks dismissal of the claims against President Glasser, Vice President Chapman, and Dean Wachtel and said parties are **DISMISSED WITHOUT PREJUDICE.**

D) **DENIED** to the extent the motion seeks dismissal of the claims as barred by statute of limitations.

E) **DENIED** to the extent the motion seeks dismissal of the federal claims against Diebold in his official capacity for injunctive relief, said claims being the only remaining claims.

This the 22nd day of May, 2006.



Signed By:

*Joseph M. Hood*

United States District Judge